ALFRED S. LAZARUS & others *vs.* WALTER S. SWAN.

Suffolk. March 6, 7, 1888. — June 23, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Sale on Consignment — Equitable Assignment — Express Promise by*
*Consignee to pay Creditor.*

A consignor of a cargo of goods for sale on commission directed the consignee by letter to pay over the net proceeds to a creditor, to whom the consignor also wrote on the same day that the consignee "has instructions to place in your hands the net proceeds of said cargo as soon as possible." The creditor thereupon wrote to the consignee, asking whether the latter would accept his draft against the shipment, to whom the consignee replied, that he would not accept such a draft but "will give you proceeds of sale as soon as in hand." Meantime the consignor wrote to the consignee as well as to the creditor that the instructions were revoked, and informing the consignee that he himself had drawn against the consignment, whereupon the consignee also wrote to the creditor of such revocation. The creditor did not give the consignor any new credit, or change his position towards him during the time covered by the correspondence; and the consignee applied the net proceeds of the cargo to the payment of the consignor's draft, leaving a balance due him from the consignor. *Held,* that the consignee made no express promise to pay such proceeds to the creditor, and that there was no equitable assignment thereof by the consignor imposing upon him the duty of holding them for the creditor's benefit.

CONTRACT, by the plaintiffs, doing business in New York under the style of A. S. Lazarus and Company, to recover the proceeds of a cargo of molasses consigned to the defendant by Daubon and Company, of Porto Rico, who were indebted to the plaintiffs. The case was submitted to this court on an agreed statement of facts, the material part of which appears in the opinion.

*J. E. Leach & F. E. Farnham,* for the plaintiffs.

The doctrine of an equitable assignment is briefly stated in *Griffin* v. *Weatherby,* L. R. 3 Q. B. 753, by Blackburn, J., at p. 758, as follows: " Ever since the case of *Walker* v. *Rostron,* it has been considered as settled law that where a person transfers to a creditor, on account of a debt, whether due or not, a fund actually existing or accruing in the hands of a third person, and notifies the transfer to the holder of the fund, although there is no legal obligation on the holder to pay the amount of the

debt to the transferee, yet the holder of the fund may, and
if he does promise to pay to the transferee, then that which was
merely an equitable right becomes a legal right in the transferee,
founded on the promise."

The order to pay, or assignment of the debt, cannot be re-
voked after it has been accepted by the holder of the fund.
*Hodgson* v. *Anderson*, 3 B. & C. 842.   *Robertson* v. *Fauntleroy*,
8 J. B. Moore, 10.   There is a good consideration for the
defendant's promise to pay the plaintiffs.   *Walker* v. *Rostron*, 9
M. & W. 411.   *Fruhling* v. *Schroder*, 2 Scott, 135.   *Crowfoot* v.
*Gurney*, 9 Bing. 372.   The defendant's promise makes an agree-
ment to pay a debt of his own, and not of another, and is not
within the statute of frauds.   *Wyman* v. *Smith*, 2 Sandf. 331.
The fact that the amount covered by the assignment is not
ascertained, does not affect the question.   *Fruhling* v. *Schro-
der, ubi supra.   Crowfoot* v. *Gurney, ubi supra.*   The agreement
cannot be altered without the consent of all parties.   *Walker*
v. *Rostron, ubi supra.*   From the above cases, it appears that
a direct privity is established by the acceptance of the order
and promise to pay, and the defendant thereupon becomes
primarily liable to the plaintiff.   See also 2 Chit. Con. (11th
Am. ed.) 913, 1375 and note *i*, 1379, 1380, and notes.   The
English doctrine has been universally followed in America in
numerous cases.   See *Christmas* v. *Russell*, 14 Wall. 69, 84;
*Wyman* v. *Smith*, 2 Sandf. 331; *Tripp* v. *Brownell*, 12 Cush.
376, 380.

.  *R. D. Smith*, for the defendant.

MORTON, C. J.   Daubon and Company, on June 19, 1885,
shipped from Porto Rico, by the brig Hyaline, a cargo of mo-
lasses consigned to the defendant, at Boston, for sale on commis-
sion on their account.   On June 23, 1885, they wrote to the
defendant a letter, enclosing a bill of lading of the shipment, and
adding, " On the safe arrival with you of the above-mentioned
vessel, we would thank you to be very active in placing the
cargo, if it is suited to the market, and the net proceeds result-
ing you will please hand to Messrs. A. S. Lazarus and Company
of New York, to whom we have written by the same mail, in-
forming them that you would remit them for our account the
sum resulting from the sale of the molasses."   On the same day

they wrote a letter to the plaintiffs, enclosing a duplicate bill of lading, in which they state that the defendant " has instructions to place in your hands the net proceeds of said cargo as soon as possible." This letter was received by the plaintiffs on July 6, 1885.

Daubon and Company, on July 5, 1885, wrote a letter to the defendant, stating that they had drawn on him two drafts on account of the molasses shipped to him, one of which, for $5,000, was expressed to be drawn against the cargo of the Hyaline, which letter contained the instruction : " You will please suspend our order to remit to A. S. Lazarus and Company, of New York, the net proceeds of the cargo per Hyaline, and in due time we will telegraph you what to do to reimburse the above-named gentlemen." On the same day, July 5, they wrote to the plaintiffs that they had " given orders to Mr. Swan, of Boston, not to send you any funds until he shall receive our advice by cable." It does not appear when these last letters were received, but by the ordinary course of the mails it would take a letter from ten to fourteen days to reach Boston from Porto Rico, and one day less to reach New York.

On July 7, 1885, the plaintiffs wrote to the defendant, informing him that they had received the letter of June 23, 1885, from Daubon and Company, and adding : " Doubtless by now you have received the invoice and bill of lading. We should like to hear for what amount and at what date you would accept a draft of ours against said shipment, Messrs. Daubon and Company having sent you the bill of lading, clear, and without having drawn against the same." To this the defendant replied on the next day, " We have received from Messrs. Daubon and Company the shipping documents of cargo molasses per Hyaline, with instructions concerning disposal, and to remit net proceeds of sale to you, which we shall do in due course, possibly remitting you an account as collections are made, should the entire cargo not be closed out promptly." On July 9, 1885, the plaintiffs again wrote the defendant, asking, " If you are willing to accept a draft of ours at thirty or sixty days for an amount, say of $3,000 or $4,000, on account of proceeds." To this, on July 10, 1885, the defendant replied, " Yours of yesterday received, and, in reply,

would say that we should not accept your drafts as suggested by you, but will give you proceeds of sale as soon as in hand."

On July 15, 1885, the defendant, having received Daubon and Company's letter of July 5, 1885, wrote to the plaintiffs as follows : " We have later advices from Messrs. Daubon and Company, informing us of having made drafts upon us for proceeds Hyaline cargo molasses, and cancelling instructions to pay same to you." Some subsequent correspondence ensued between the parties, the plaintiffs claiming that the defendant was liable to them, and the defendant denying his liability, which it is not necessary to refer to more particularly. It is admitted that the plaintiffs did not give Daubon and Company any new credit, or change their position towards Daubon and Company, between June 19 and July 18, 1885 ; and that the net proceeds of the cargo of the Hyaline and of other cargoes were applied by the defendant to the payment of Daubon and Company's drafts upon him, leaving a balance due from Daubon and Company to him of $789.61.

Upon this state of facts, it is clear that there is no express promise by the defendant to pay the proceeds of the cargo of the Hyaline to the plaintiffs, upon which they can rely. The letters of the defendant do not contain words of promise or agreement, but merely notify the plaintiffs of the instructions' he has received from Daubon and Company, and his intention to carry out his instructions. Besides, there is no consideration for such promise shown. *Rogers* v. *Union Stone Co.* 130 Mass. 581. *Clement* v. *Earle*, 130 Mass. 585, note.

But the plaintiffs rely upon the ground that the transaction amounted to an equitable assignment to them by Daubon and Company of the proceeds of the cargo of the Hyaline, and that, when the defendant received such proceeds, he, having been notified of the assignment, was bound to account to them. The doctrine of equitable assignments is well settled. If a person transfers to a creditor, on account of a debt, a fund in the hands of a third person, and the holder of the fund is notified of the transfer, he is bound, if he has no prior claim upon the fund, to hold it in trust and for the benefit of the creditor, who may enforce his claim in equity, or at law if the holder promises to

pay them. *Griffin* v. *Weatherby*, L. R. 3 Q. B. 753. *Tripp* v. *Brownell*, 12 Cush. 376. Story Eq. Jur. § 1041 *et seq.*

But there must be an assignment by the owner of the fund, that is to say, a transfer or appropriation of the fund to the creditor's use. For instance, if in this case the consignors of the molasses had drawn and sent to the plaintiffs an order upon the defendant to pay the fund to the plaintiffs, and he had been notified of it, he would have been liable in some form of action to the plaintiffs, as such an order is in its nature a transfer of the fund, and as he has no prior claims which could prevent the consignors from assigning it. But the difficulty with the plaintiffs' case is, that the evidence does not show any assignment or transfer of the fund to them. The only evidence upon which they rely as showing an assignment is the statement in the letter of June 23, 1885, from Daubon and Company, that the defendant " has instructions to place in your hands the net proceeds of said cargo as soon as possible." This is not an order on the defendant, nor an assignment of the fund. It cannot be held to have this effect without greatly enlarging the natural meaning of the language. It does not purport to convey the fund to them in payment of or as security for their debt. We cannot infer from the language used, or from the circumstances that it was the intention of Daubon and Company to set apart and appropriate the fund to the use of the plaintiffs. The language does not import this, and we cannot, by any fair construction, give it this meaning. We are therefore of opinion, that the plaintiffs fail to show an equitable assignment to them.

In this view of the case, it is not necessary to consider the other questions argued by the counsel.

*Judgment for the defendant.*